IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEFFREY D. HILL,                    :
                                    :        Case No. 4:05-CV-1229
            Plaintiff,              :
                                    :
    v.                              :
                                    :
EVELYN DERRICK,                     :
RICHARD SUTTON,                     :        (Judge McClure)
JANE STUGART-OTTERBEIN,             :
and LORI CRESSMAN,                  :
                                    :
            Defendants.             :

**M E M O R A N D U M**

June 8, 2006

**BACKGROUND:**

On June 20, 2005, plaintiff Jeffrey D. Hill commenced the instant litigation

by filing a pro se complaint in the Middle District of Pennsylvania.[1]  The complaint

_____

[1]Plaintiff is the subject of a restrictive-filing order for the United States

District Court for the Middle District of Pennsylvania enjoining him from

instituting any civil action in the United States District Court for the Middle

District of Pennsylvania until it has been screened by the court and found to not

contain offensive or derogatory material.  Hill v. Burd, No.4: CV-92-0078, (M.D.

Pa. Oct. 19, 1994) (McClure, J.).  Hill's complaint survived this screening.

1

arises out of plaintiff's banishment from the Muncy Public Library. On November 3, 2005, we granted defendants' motion to dismiss in part, but allowed plaintiff's section 1983 claims, liberally construed as alleging violations of the First and Fourteenth Amendments, to remain against defendants Derrick and Cressman. (Rec. Doc. No. 20.)

On March 3, 2006, plaintiff filed a motion for summary judgment. He filed a brief in support on March 20, 2006. Defendants filed their motion for summary judgment on April 14, 2006. Their motion was fully briefed on May 5, 2006. On May 12, 2006, Hill filed a motion to strike portions of defendant's motion for summary judgment and facts in support of motion for summary judgment. For the following reasons we will deny Hill's motion to strike, deny Hill's motion for summary judgment, grant defendants' motion for summary judgment, enter judgment in favor of defendants and against plaintiff, and direct the clerk to close the case file.

**DISCUSSION:**

## I. LEGAL STANDARD

It is appropriate for a court to grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.

Civ. P. 56(c).

"If the nonmoving party has the burden of persuasion at trial, 'the party

moving for summary judgment may meet its burden by showing that the

evidentiary materials of record, if reduced to admissible evidence, would be

insufficient to carry the nonmovant's burden of proof at trial.'" Jalil v. Avdel Corp.,

873 F.2d 701, 706 (3d Cir 1989) (quoting Chippolini v. Spencer Gifts, Inc., 814

F.2d 893, 896 (3d. Cir. 1987)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986).

In evaluating a motion for summary judgment the court will draw all

reasonable inferences from the evidence in the record in favor of the nonmoving

party. Am. Flint Glass Workers Union v. Beaumont Glass Co., 62 F.3d 574, 578

(3d Cir. 1995). The nonmoving party, however, cannot defeat a motion for

summary judgment by merely offering general denials, vague allegations, or

conclusory statements; rather the party must point to specific evidence in the

record that creates a genuine issue as to a material fact. See Celotex, 477 U.S. at

32; Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir.

1999).

## II. FACTUAL BACKGROUND

### A.  Local Rule 56.1

First, we note that defendants complied with Local Rule 56.1 and submitted a statement of undisputed material facts in the form of short and concise numbered paragraphs supported by citations to the record, albeit not always precise citations. (Rec. Doc. No. 61.)  Plaintiff has not filed a counter-statement of undisputed material facts and has failed to comply with the procedure set forth in Local Rule 56.1.  Local Rule 56.1 provides in relevant part that:

> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, <u>responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph [relating to the moving party's statement of material facts], as to which it is contended that there exists a genuine issue to be tried</u>.

Local Rule 56.1 (emphasis added).

Despite Hill's failure to adhere to the technical requirements of the Local Rule, the court makes every effort to address Hill's assertions that genuine issues of material fact exist that he raises in various filings before the court and his own motion for summary judgment.  Of course, at this stage in the litigation Hill cannot

rest on mere allegations and must point to evidence in the record that supports his claim.

## B. Undisputed Material Facts

The Muncy Public Library ("Library") is a nonprofit literary and educational institution, which provides information and reading materials to the residents of Muncy Borough, Muncy Township, and Muncy Creek Township. The Library is managed and operated by a private association known as the Board of Trustees of the Muncy Public Library ("Board"). The Board is comprised of nine members. One of the nine members is appointed by the Muncy Borough Council, while the remaining eight members are unpaid volunteers.

Defendant Evelyn Derrick is the President of the Board of Trustees of the Muncy Public Library.[2] The Library employs defendant Laurie Cressman as a librarian.[3]

On September 10, 2002, the Board approved various rules and regulations to ensure patron safety. (Rec. Doc. No. 71, "Muncy Public Library Rules of

---

[2]She was also president at the time of the incident involving plaintiff in 2003.

[3]Like Derrick, Cressman was also a paid librarian of the Library at the time of the incident involving the plaintiff.

Conduct", Ex. C, at 11.)  The rules include the prohibition of  "[a]dministering

corporal punishment or physically abusing anyone on library property."  Id.  The

rules provide that "[t]he Library Board of Trustees, on the recommendation of the

library director, may deny any patron who violates these rules and regulations the

privilege of access to the library."  Id.[4]

On July 21, 2003, at approximately 3:00 p.m., plaintiff Jeffrey D. Hill

("Hill") was using one of the computers in the computer area of the Muncy Public

Library.  While Hill was using the computer, two teenage patrons named Nevin

Weaver and Lucas Bitler entered the computer area.  Bitler began bouncing a

---

[4]Hill asserts in his "motion to strike" that the Library has an unwritten "zero

tolerance" policy on corporal punishment.  (Rec. Doc. No. 72, at 4.)  Perplexingly,

in his very next sentence Hill references the "Library Rules of Conduct," which

both prohibit corporal punishment and state that those who violate the rules may be

denied the privilege of accessing the Library.  Hill states that the Library's rules

are undated, which the copy provided to Hill apparently was, but the defendants'

exhibit submitted to the court clearly indicates that the rules were adopted on

September 10, 2002, well before the incident that gave rise to this suit.  (Rec. Doc.

No. 71, Ex. C, at 11.)

basketball but stopped after plaintiff and defendant Cressman told him to stop.[5]

Subsequently, Hill engaged in an argument with the two teenagers based on what Hill perceived to be inappropriate comments made by the teenagers. Rather than asking one of the librarians to intervene, Hill stood up and grabbed Bitler by the shirt and struck the teenager in the face, causing him to jerk backwards and knocking his hat off.[6] Hill hit Bitler hard enough that Cressman heard the strike even though she was not in the computer area.[7]

Immediately after the incident Cressman and Jane Stugart-Otterbein spoke to

[5]Though not material to our disposition, Hill asserts that he was responsible for getting Bitler to stop bouncing the ball. In his "motion to strike" he states that he forcefully told Bitler to "knock it off!" (Rec. Doc. No. 72, at 1.)

[6]Again, not material to our discussion, Hill disputes that he hit Bitler while standing. (Rec. Doc. No. 72, at 2.)

[7]Once again, immaterial to our discussion, Hill asserts that Cressman does not know what she heard because she did not see him hit Bitler. (Rec. Doc. No. 72, at 2.) Hill admits that he hit Bitler and notes that another patron "snitched [him] out." Id. Hill throughout his filings repeatedly argues about the librarians' alleged dereliction from their duties, which we have already explained is irrelevant to his claim.

Hill to get his side of the story. During that discussion Hill admitted to Cressman that he struck Bitler in the face. Hill further told Cressman that the boys were bothering him and that "somebody needed to discipline that kid and if nobody else was going to do it then I would." Plaintiff offered no other justification.

Hill then stormed out of the Library without being told to leave.[8] Immediately after the incident Cressman called Derrick and informed her about the incident. Cressman also told Derrick that Hill admitted to striking Bitler in the face. Derrick called 911 and as a result the Muncy Police Department came to the Library to investigate. On the date of the incident, Muncy Police Chief Richard Sutton arrived on the scene and interviewed the defendants, the teenagers, and a witness.

On the evening of July 21, 2003, Hill approached Cressman in the Library parking lot while she was eating dinner in her car. At that time, Hill asked Cressman whether he would be allowed to return to the Library.

───────────────

[8]Hill disputes this version of events and states that Cressman discussed the incident, informed Hill of the Library's zero-tolerance policy for corporal punishment, and immediately ordered him to leave the Library. Assuming Cressman ordered him to leave the Library on July 21, 2003, that still would not change our analysis of Hill's claim.

Cressman responded by telling Hill that the decision was out of her hands and that he should leave the premises until he heard from Derrick and the Board. Hill left the parking lot.

By letter dated July 21, 2003, Derrick sent Hill a letter initially revoking his Library privileges. (Rec. Doc. No. 71, Ex. E, at 18.) The Board of Trustees later ratified Hill's expulsion although a formal resolution was not passed.

On August 5, 2003, Hill was questioned by Muncy Police Officer David Schultz and once again admitted to hitting Bitler in the face. At that time Hill stated that "someone needed to correct him and if I had to do it over, I would hit him harder the next time."

To date Hill remains expelled from the Muncy Public Library, but he is free to use other libraries in Lycoming County. By Hill's own admission he has used the James V. Brown Library in Williamsport since his expulsion from the Muncy Public Library.

### III. ANALYSIS

**A. Hill's May 12, 2006 Motion to Strike**

Federal Rule of Civil Procedure 12(f) provides that a party may move a court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Although Hill has

characterized his filing as a motion to strike, the motion's contents contain

unsupported allegations attacking the defendant's statement of undisputed material

facts. We have attempted to incorporate Hill's objections into our statement of the

facts and will deny Hill's motion as it does not address matters included under the

language of Rule 12(f).

## B. Hill's Section 1983 Claims

In our November 3, 2005 order, after liberally construing plaintiff's

complaint, we allowed Hill to proceed with a section 1983 claim alleging

deprivation of his First Amendment right to assemble and Fourteenth Amendment

right to procedural due process against defendants Derrick and Cressman. In that

order, we noted that the defendants could attempt to establish at a later date that the

employees of the Muncy Public Library were not acting under the color of state

law when they banned Hill from the Library. Defendants now argue in their

motion for summary judgment that defendants have not acted as state actors and

that Hill has failed to establish the same. The defendants also argue that Hill loses

on the merits of his First Amendment claim and his Fourteenth Amendment

procedural due process claim.

Before going any further we reiterate, from our November 3, 2005 order that

in order for Hill to prevail under 42 U.S.C. § 1983 he must establish two elements:

1) that the conduct complained of was committed by a person acting under color of state law; and 2) that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993) (citing Parratt v. Taylor, 451 U.S. 527, 534 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)). Defendants in their motion for summary judgment argue that Hill has failed to establish evidence from which a reasonable jury could find either element. We decline to find that the Muncy Public Library and its employees are not state actors under the facts of this case. Nevertheless, we will grant defendants' motion for summary judgment because we find for the following reasons that Hill loses on the merits of his claims of constitutional injury.

## 1. Muncy Public Library as a "State Actor"

A section 1983 plaintiff must establish that the conduct complained of was committed by a state actor. Defendants contend that Hill has failed to establish that the defendants were acting under the color of state law when they banned Hill from the Muncy Public Library.

It is well established that a private party cannot be held liable under section 1983 unless the conduct was done under the color of state law. See Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001)).

Section 1983's "under color" of law requirement and the Fourteenth Amendment's "state action" requirement are consistently treated as the same thing. Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982);  Jackson v. Temple Univ., 721 F.2d 931, 932-33 (3d Cir. 1983).  The Third Circuit, quoting the Supreme Court, has noted that the criteria to determine whether facts present state action "lack rigid simplicity." Benn v. Universal Health Sys., 371 F.3d 165, 171 (3d Cir. 2004) (quoting Brentwood Acad., 531 U.S. at 296).  However, a court can only hold private parties liable under section 1983 "if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" Brentwood Acad., 531 U.S. at 295.

In the following passage, the Supreme Court identified several different means by which a court might determine the presence of state action when private parties are involved.

> We have, for example, held that a challenged activity may be state action when it results from the State's exercise of "coercive power," when the State provides "significant encouragement, either overt or covert," or when a private actor operates as a "willful participant in joint activity with the State or its agents." We have treated a nominally private entity as a state actor when it is controlled by an "agency of the State," when it has been delegated a public function by the State, when it is "entwined with governmental policies," or when government is "entwined in [its] management or control."

Brentwood Acad., 531 U.S. at 295 (internal quotation marks and citations omitted).

As we noted in our November 3, 2005 order, the United States Court of Appeals for the Third Circuit in Hollenbaugh v. Carnegie Free Library, 545 F.2d 382 (3d Cir. 1976) held that the Commonwealth of Pennsylvania's involvement with a public library was significant enough to find that the state was a joint participant with the library. The court applied a nexus test to determine whether the library could be considered a state actor. As part of that test, the court weighed a series of factors including the percentage of the library's funds which came from state and local government financing, the number of the library's trustees appointed by governmental bodies, the fact that local municipalities passed resolutions designating the library as their agent, and that the city enacted an expressed tax to support the library. Id. at 384.

Defendants now argue in their motion for summary judgment that Hill cannot establish that the Library or either defendant is a state actor and that the symbiotic/joint participation test applied by the court in Hollenbaugh has been since limited by Crissman v. Dover Downs Entm't, 289 F.3d 231, 240-41 (3d Cir. 2002). The Crissman Court found that the symbiotic relationship/joint participation test was particularly limited in application. Id. at 242. Nevertheless, the Crissman court noted that the test was often used in the Third Circuit to find

state action in the case of universities and libraries.  Id. at 239 n.11 (citing

Hollenbaugh among others).

Defendants also argue that the facts of this case are distinguishable from the

facts in Hollenbaugh and that Hill cannot prove that the Library and its employees

were state actors simply because a ninth of the Library's Board is appointed by the

Muncy Borough Council.  We believe that there remain genuine issues of fact as to

whether the Library and its employees were state actors when they banned Hill

from the Muncy Public Library.  However, those issues do not need to be resolved

at a trial because we find that Hill cannot demonstrate a constitutional injury.

## 2.  Hill's First Amendment Claim

The First Amendment includes the "positive right of public access to

information and ideas."  Kreimer v. Bureau of Police for the Town of Morristown,

958 F.2d 1242, 1255 (3d Cir. 1992); Stanley v. Georgia, 394 U.S. 557, 564 (1969).

This positive right includes the right at some level to access to a public library.  Id.

at 1256; Neinast v. Bd. Tr. of the Columbus Metro. Library, 346 F.3d 585, 591 (6th

Cir. 2003); see also Miller v. Northwest Region Library Bd., 348 F. Supp. 2d 563,

570 (M.D.N.C. 2004); Armstrong v. Dist. of Columbia Pub. Library, 154 F. Supp.

2d 67, 75 (D.D.C. 2001) (stating that there "is long-standing precedent supporting

plaintiff's First Amendment right to receive information and ideas, and this right's

nexus with access to public libraries").

Under First Amendment jurisprudence a public library is a limited public forum. Kreimer, 958 F.2d at 1259; Neinast, 346 F.3d at 591. Therefore, the Library "is obligated only to permit the public to exercise rights that are consistent with the nature of the Library and consistent with the government's intent in designating the Library as a public forum." Kreimer, 958 F.2d at 1262; Neinast, 346 F.3d at 591 (quoting Kreimer , 958 F.2d at 1262). "Traditionally, libraries provide a place for 'reading, writing, and quiet contemplation.'" Neinast, 346 F.3d at 591 (quoting Kreimer, 958 F.2d at 1261).

At issue in this case is the Muncy Public Library's rule that provides for the denial of access to a patron who violates Library rules by "administering corporal punishment or physically abusing anyone on library property." (Rec. Doc. No. 71, Ex. C, at 11, ¶ 16.) In Kreimer the United States Court of Appeals for the Third Circuit indicated what types of restrictions were permissible in limited public fora. In relevant part the appeals court stated:

> The Supreme Court has indicated that restrictions that do not limit those First Amendment activities the government has specifically permitted in the designated forum need only be "reasonable and 'not an effort to suppress expression merely because public officials oppose the speaker's view.'" []  In contrast, time, place or manner regulations that limit permitted First Amendment activities within a designated public forum

15

> are constitutional only if they are "narrowly tailored to
> serve a significant governmental interest, and . . . leave
> open ample alternative channels for communication of
> information."

Kreimer, 958 F.2d at 1262 (quoting United States v. Kokinda, 497 U.S. 720, 730

(1990)(quoting Perry Educ. Ass'n v. Perry Local Educs. Ass'n, 460 U.S. 37, 46

(1983)) & (quoting Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989)

(quoting Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 293 (1984)).

Prohibiting Hill, and other patrons, from administering corporal punishment

does not directly impact Hill's First Amendment right to access information.

Therefore, the Library's rule prohibiting corporal punishment is analyzed under a

lenient reasonableness standard.  The rule is clearly reasonable.

The rules prohibiting certain conduct were passed "[i]n order to provide all

visitors with good service in a pleasant atmosphere" and "to ensure the comfort

and security of patrons and library staff."  (Rec. Doc. No. 71, Ex. C, at 11.)

Prohibiting corporal punishment and authorizing the denial of access to the Library

for such conduct is a reasonable means of furthering these goals.  The United

States Court of Appeals has already noted in the library rules context that

"[p]rohibiting disruptive behavior is perhaps the clearest and most direct way to

achieve maximum Library use."  Kreimer, 958 F.2d at 1263.

Like the rule at issue in Kreimer we find the Library's prohibition of

corporal punishment to be fundamentally reasonable.  And also like the <u>Kreimer</u> court, we find that the rule's enforcement provision, allowing for denial of access to a patron who violates the rules, "is not only a reasonable provision, but it is a necessary one to enforce compliance with the substantive provisions." <u>Id.</u> at 1265. Therefore, Hill's First Amendment claim fails on the merits.[9]

### 3.  Hill's Procedural Due Process Claim

Hill asserts that he was deprived of his right to "go to + use the Muncy Public Library . . . without due process of law."  (Rec. Doc. No. 1, at 6, ¶ 26.)  The first inquiry in evaluating a claim alleging a violation of procedural due process is whether the plaintiff has a constitutionally protected property or liberty interest. <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 572, 576 (1972).  The individual interests to which procedural due process applies are those protected by the Constitution. <u>Id.</u> at 572.  The Third Circuit has articulated those as the individual interests embraced

---

[9]We also agree with the defendants that any First Amendment burden Hill suffered was incidental to his decision to physically attack a minor patron.  Hill's decision to assault Bitler was not an expressive or protected activity making the Library's rule a permissive regulation.  <u>See</u> <u>Arcara v. Cloud Books, Inc.</u>, 478 U.S. 697, 705 (1986) (First Amendment not to be used as a cloak to "obviously unlawful" conduct).

by the "fourteenth amendment's protection of life, liberty, or property." <u>Alvin v.</u>

<u>Suzuki</u>, 227 F.3d 107, 116 (3d Cir. 2000).

As to Hill's contention that he has a protected property or liberty interest, the

Supreme Court has instructed that a protected liberty interest "may arise from two

sources– the Due Process Clause itself and the laws of the States." <u>Kentucky v.</u>

<u>Dep't of Corrections v. Thompson</u>, 490 U.S. 454, 460 (1989). Individuals are

afforded constitutional protection under procedural due process only for legally

cognizable liberty or property interests, not liberty or property interests that

plaintiffs simply have an "abstract need or desire for." <u>Roth,</u> 408 U.S. at 577. Due

process requires protection of only those interests of a "legitimate claim of

entitlement to an asserted right, or, in other words, an enforceable expectation

governed by statute or contract." <u>Rossi v. Com., Pa. State Police</u>, 515 A.2d 120,

121-122 (Pa. Commw. 1986) (citations omitted). "The right to a particular process

[under a state law] does not alone create a [liberty or] property interest."

<u>Independent Enterprises, Inc. v. Pittsburgh Water & Sewer Co.</u>, 103 F.3d 1165,

1178 n.10 (3d Cir. 1997) (citing <u>Olim v. Wakinekona</u>, 461 U.S. 238, 250 (1983)).

Rather, in order to ascertain whether a state statute creates a protected liberty

interest requires our determination of whether the state statute places "substantive

limitations on official discretion." <u>Stephany v. Wagner</u>, 835 F.2d 497, 500 (3d Cir.

1987) (citing Olim, 461 U.S. at 249).

The Constitution is not the source of the property interests which are afforded procedural due process protections.  Roth, 408 U.S. at 577. "Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law - rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id.; see also Ruiz v. New Garden, 376 F.3d 203, 206 (3d Cir. 2004) ("State law defines property interests for purposes of procedural due process claims.")  A district court determining whether a plaintiff has a protected property interest in state law applies the same inquiry as it would in determining whether a state law creates a protected liberty interest, i.e., whether a law places substantial limitations on an official's discretion.  See Specter v. Garrett, 971 F.2d 936, 955 (3d Cir. 1992), vacated on other grounds, 506 U.S. 969 (1992).

First, we agree with defendants that Hill cannot establish a protected liberty interest from the Constitution's Due Process Clause.  Therefore we turn to Hill's claim that Pennsylvania law creates a liberty interest in his right to use the Muncy Public Library, which requires us to examine the text of The Library Code, 24 Pa. C.S.A. § 4415.  Section 4415 of the Commonwealth's Library Code provides:

> Every library, established and/or maintained under the provisions of this act, <u>shall be free to the use of all the residents and taxpayers of the municipality, subject to such reasonable rules and regulations as the board of library directors may adopt, and the board may exclude from the use of the library any person who wilfully violates such rules.</u> The board may extend the privileges of such library to persons residing outside the limits of such municipality upon such terms and conditions as the board may prescribe.

24 Pa. C.S.A. § 4415 (emphasis added).

Defendants argue that this provision "confers a benefit . . . [but] it could hardly be argued that it creates a protected liberty interest . . . . [because] section 4415 places no substantive limitations on the Board's discretion to exclude patrons." (Rec. Doc. No. 71, at 20.) We disagree. Section 4415 places substantive limitations on municipal officials in two ways. First, it requires that the library be "free to the use of all the residents and taxpayers of the municipality." Residents and taxpayers can lose this benefit if they violate "reasonable rules and regulations" adopted by the Library's Board. This provision does not provide unlimited authority to the Library Board to deny access to patrons. Therefore, under section 4415 Hill has a protected liberty interest in using the Muncy Public Library.

The second inquiry in evaluating a procedural due process claim is whether the process afforded by the Library met constitutional muster. Morrissey v. Brewer, 408 U.S. 471, 481 (1972). For the following reasons, we find that the process afforded Hill was constitutional.

"The touchstone of due process is protection of the individual against arbitrary action of the government." Wolff v. McDonnell, 418 U.S. 539, 558 (1974). Due process is flexible and calls for protections as the particular situation demands. Morrissey, 408 U.S. at 481. At a minimum, however, "[p]arties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." Goss v. Lopez, 419 U.S. 565, 579 (1975) (citations omitted). Because due process is flexible, notice need not be in advance, so long as the timing of the notice does not deprive the potentially-impacted party from telling his side of the story. See Gniotek v. City of Philadelphia, 808 F.2d 241, 244-45 (3d Cir. 1986), cert. denied, 481 U.S. 1050 (1987).

Hill asserts that he was singled out by biased librarians and banished from the Library on the basis of an arbitrary decision grounded on unwritten rules. No reasonable jury could find that to be the case. Hill admits that he was given an opportunity to tell his side of the story to Cressman and that he admitted to her that he hit Bitler. Hill also admits that Cressman informed him of the Library's zero-

tolerance policy for corporal punishment.[10]  Assuming Hill was then ordered to leave the Library we find that Hill was afforded sufficient pre-deprivation due process in that he was provided oral notice of the Library's corporal punishment policy and an opportunity to be heard.  Due process is a flexible concept that calls for protections as the particular situation demands.  Hill's interest in using the Muncy Public Library is not so great as to warrant more process than the opportunity to be heard before being informed that he needed to leave the Library after striking a minor patron in the face in violation of the Library's corporal punishment and physical abuse policy.  No reasonable jury could find on the basis of the evidence in the record, including Hill's numerous admissions, that he was denied procedural due process when he was banned from the Muncy Public Library for striking a minor patron.

We note that Hill is still able to use the James V. Brown Public Library in

_____

[10]Hill's argument that he was not provided a warning is misplaced.  The Library rule that provides patrons with an initial warning is Rule #1 addressing disruptive patrons.  Although Hill's conduct in this incident would likely fall under this rule as well, he clearly was administering corporal punishment or physically abusing Bitler when he hit him.  This conduct falls under Rule #16, which does not provide an initial warning.

Williamsport, Pennsylvania. Although that may not be as convenient for Hill, on July 21, 2003, he chose to hit a minor patron in the face and lost the right to use the Muncy Public Library. Unfortunately, Hill admitted after the fact that he would hit Bitler harder if he had to do it again. Hopefully, he still does not feel that way today, but we remind him that it was his misconduct that led to his expulsion from the Library and not the defendants' conduct.

**CONCLUSION:**

For the aforementioned reasons, the court will issue an order entering judgment in favor of defendants Derrick and Cressman and against plaintiff Jeffrey D. Hill.

   s/ James F. McClure, Jr.    
James F. McClure, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEFFREY D. HILL,                          :
                                          :     Case No. 4:05-CV-1229
            Plaintiff,                    :
                                          :
      v.                                  :
                                          :
EVELYN DERRICK,                           :
RICHARD SUTTON,                           :     (Judge McClure)
JANE STUGART-OTTERBEIN,                   :
and LORI CRESSMAN,                        :
                                          :
            Defendants.                   :

# O R D E R

June 8, 2006

For the reasons set forth in the accompanying memorandum,

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    Hill's motion to strike is denied.  (Rec. Doc. No. 72.)

2.    Hill's motion for summary judgment is denied.  (Rec. Doc. No. 50.)

3.    Defendants' motion for summary judgment is granted.  (Rec. Doc. No. 60.)

4.    Hill's June 2, 2006 amended complaint is dismissed as it was filed after the filing of cross motions for summary judgment and without leave of court.  (Rec. Doc. No. 76.)

5.    Any other documents filed by Hill that could be construed as motions are denied.

6.     Final judgment is entered in favor of defendants Evelyn Derrick and
       Lori Cressman and against plaintiff Jeffrey D. Hill.

7.     The clerk is directed to close the case file.

                              ___s/ James F. McClure, Jr._____
                              James F. McClure, Jr.
                              United States District Judge